ROBERT L. BLAND, Judge,
dissenting.
I cannot give sanction to the award in this case made by majority members of the court. 1 cannot endorse or agree to the correctness of the statement in the majority opinion that “The evidence presented in support of the claim under consideration and the facts adduced show such a breach of the contract by the department involved as to justify an award to claimants.” There has-been no breach of the contract in the premises. The majority members, in their determination of this claim, have lost sight of the polestar.in the case. They have failed to see and follow the unerring guiding light of truth so brightly reflected throughout the record. Wandering'in the darkness they have overlooked the impregnable defense made to the claim by the state road commission.
A proper analysis of the whole evidence must necessarily lead to the conclusion and show that the claim should be denied and the case dismissed.
In 1938 persons residing in the vicinity of Browns Creek, in Kanawha county, West Virginia, were desirous of having a secondary road built in their neighborhood. About that time the state road commission was sponsoring a federal works progress administration project in Ka-nawha county. Before the road commission could build a road it was necessary for rights of way and so forth to be obtained. The people in the Browns Creek section arranged with a gentleman by the name of Knapp, then mayor of St. Albans, to secure such rights of way. The road commission needed a quarry for the W.P.A. forces to *129 start the road work. There were two quarries in the neighborhood available, one on the Mason Arbaugh property and one on the seven and one-half acres of land owned by the claimants. Mr. Knapp deemed the quarry on the Arbaugh property inadequate. He was therefore directed to get a contract for the claimants’ quarry before the road work was begun. By an agreement in writing bearing date of the sixteenth of October, 1938, claimant George Wisman granted to the road commission the right to quarry and remove rock from the quarry on the property of claimants until October 1, 1939. The said agreement provided, however, that such rock should be used on the Browns Creek Road. The road project was then started and prosecuted until funds available for the purpose ran out. At this time about one and one-half miles of the Browns Creek road had been built. For a period the W.P.A. forces remained idle, but in a short time another project was started on the Tornado or Upper Falls road. In order to use rock from claimants’ quarry on the Upper Falls road it was deemned necessary to obtain a further agreement from claimants. Accordingly an agreement dated March 19, 1940, was prepared and submitted for execution. Claimant George Wisman wrote an endorsement thereon assenting to the use of rock from claimants’ quarry on the Upper Falls road. Work was done on the latter road for a while and claimant George Wisman complained about damages on the Wisman property. Some apple trees in the orchard had been destroyed. His claim was duly considered by the road commission officials and in order to effect full, complete and final settlement of all matters in difference and all damages then or thereafter to be done on account of or resulting from'quarry operations on claimants’ property, an agreement bearing date on the twenty-first day of October, 1940, called the “Borrow Pit Agreement” was executed. The three paper writings in question should be read and considered together. That the “Borrow Pit Agreement” was intended to take care of all damages which had been done to the property of claimants and all future damages that might be done thereon as a *130 result of quarry operations was clearly understood by all parties concerned. The majority opinion challenges this proposition and quotes partially from a letter written by an assistant district right of way agent to the district engineer of the commission and asserts the said letter to be “Wholly self-serving and hearsay and not worthy of serious consideration.” Section 15 of the act creating the court of claims provides in part as follows:
“Under its rules, the court shall not be bound by the usual common law or statutory rules of evidence. The court may accept and weigh in accordance with its evidential value any information that will assist the court in determining the factual basis of the claim.”
Since this provision in the statute is not self-executing it was formally adopted as a court rule, i.e. rule IX, "subsection (c), by the court of claims.
In view of an excerpt from the above mentioned letter used in the majority opinion, a quotation that does not give or set forth all of the information furnished to the court by that letter,- the said letter, dated October 26, 1940, is now set forth in its entirety as follows:
“Mr. Ray Cavendish
District Engineer
Charleston, West Virginia
Re: Borrow Pit Agreement
George Wisman, et als
Browns Creek Road
Dear Mr. Cavendish:
We enclose herewith a Borrow Pit Agreement, in triplicate, executed by George Wisman, et als, and covering the stone quarry previously used to secure material for the Browns Creek and Coal River Road.
The purpose of this agreement is to cover any or all damages sustained by the Wisman property, *131 and to extend the privilege of further quarrying until October 1, 1942.
The consideration of Five hundred ($500.00) dollars to be paid may seem excessive, but I wish to point out that this quarry is situated immediately above an orchard containing in all 33 bearing apple trees. Many of these trees have already been totally destroyed through careless construction of approach roads and blasting and other quarry operations. It is unlikely that any of these trees will have any value after this quarry has been completely worked.
With this in mind, I have agreed to a consideration of Five Hundred ($500.00) dollars for the quarry and all damages to the residue of the premises and recommend that this agreement be approved and passed for payment.
I will check the title to this property at the earliest possible time, and advise you of my finding.
Very truly yours,
/s/ George A. Wilson
GEORGE A. WILSON
Assistant District Right of GAW :bb Way Agent”
Reading this letter in conjunction with the “Borrow Pit Agreement” it is made manifest that the payment of $500.00 made to claimants under the terms of said “Borrow Pit Agreement” was intended to be in full settlement of all damages which might result to claimants on account of quarry operations. The evidence introduced upon the hearing of the claim shows that the said sum of $500.00 was paid by the road commission to the claimants. They are bound by that agreement. What advantage would a solemn agreement be if it could be so easily disregarded at the will and pleasure of any of the parties thereto? What use would there be for the road commission to enter into *132 an agreement at any time if the party or parties with whom it is made could disregard and evade its binding provisions at their will and pleasure?
It was shown upon the hearing that the entire parcel of land owned by claimants on which the ledge or quarry is located is and has for several years past been assessed at $100.00. The taxes thereon are seventy-eight cents for each half year or $1.56 per annum. There are no improvements on the land. On the entire parcel there is only approximately 100 X 100 feet of level land. There is no fence on the property so far as the evidence discloses. What apples grew in the orchard were given away to the Salvation Army and anybody else who wanted them. It was shown by the testimony introduced by the claimants that the land is not worth more than $600.00. The claimants have heretofore been paid $500.00 by the road commission. The award made by majority members of the court gives them an additional sum of $500.00. Certainly there is some duty resting upon the court of claims to protect the interest of the state.
With becoming deference to the action of my esteemed colleagues I most respectfully record my dissent to their judgment in this case.